IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LEALA ARCHER,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | **MEMORANDUM DECISION**<br><br>Case No. 2:15-cv-00612-PMW<br><br>Magistrate Judge Paul M. Warner |

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the decision of the Acting Commissioner of Social Security (Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act). After careful review of the entire record, the parties' briefs, and arguments presented at a hearing held on July 28, 2016, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and free of harmful legal error and is, thus, **AFFIRMED**.

This Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]." *Id.* (citation omitted). Where the evidence as a whole

1

can support either the agency's decision or an award of benefits, the agency's decision must be affirmed. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

In this case, Plaintiff claimed disability at the age of 38, based on bipolar disorder with "[e]xtreme mood swings," high anxiety, and obsessive-compulsive disorder (Certified Administrative Record (Tr.) 174, 184, 203). She completed high school and had past relevant work as a photographer helper (Tr. 18, 278).

The ALJ followed the five-step sequential evaluation process for evaluating disability claims (Tr. 11-20). *See generally* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). But the ALJ found that Plaintiff's claims of completely disabling limitations were not entirely believable and that she retained the residual functional capacity to perform work at all exertional levels requiring only simple work-related decisions; brief and superficial interactive contact with the public; simple, routine, goal-oriented work in a stable environment with few changes; and no fast-paced work (Tr. 15). Considering this residual functional capacity, the ALJ found—consistent with the vocational expert's testimony—that Plaintiff could not perform her past relevant work as a photographer helper, but she could perform other jobs existing in significant numbers in the national economy (Tr. 18-19). The Court finds that the ALJ's factual findings are supported by substantial evidence in the record and that the correct legal standards were applied.

### I. The ALJ properly considered Plaintiff's mental limitations.

Plaintiff raises three challenges to the ALJ's consideration of her mental limitations (Plaintiff's Brief (Pl. Br.) at 15-19). For the reasons set forth below, the Court finds that

Plaintiff's contentions are unavailing because the ALJ did not err in evaluating Plaintiff's mental impairments, and he articulated sufficient reasoning for his determination.

### A. The ALJ's step three finding is supported by substantial evidence.

Plaintiff argues that the ALJ erred at step three because he found that she did not meet or equal the requirements of a listed impairment (Pl. Br. at 15-16).  But Plaintiff's argument ignores that the ALJ also gave "great weight" to the opinions of two State agency psychological consultants (Drs. Raps and Berkowitz) who found that Plaintiff did not meet or equal a mental impairment listing because she had no limitation in maintaining activities of daily living; mild social limitations; moderate limitations in concentration, persistence, or pace; and no episodes of decompensation (Tr. 15; *see, e.g.*, Tr. 77, 89).  The ALJ found Plaintiff no less limited (*see* Tr. 14), and the Court finds that these opinions constitute substantial evidence supporting the ALJ's decision.  *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); *see also Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider).  Plaintiff's argument is simply an alternative interpretation of the record.  This Court, however, may not reweigh the evidence.  *Lax*, 489 F.3d at 1084.  The Court concludes that the ALJ did not err at step three of the sequential evaluation process.

### B. The ALJ reasonably discounted Plaintiff's global assessment of functioning (GAF) scores.

Plaintiff claims that the ALJ should have considered her low GAF scores as demonstrating that she consistently showed a serious functional impairment (Pl. Br. at 17).

3

However, low GAF scores do not strictly relate to a claimant's ability to work despite her impairments. *See, e.g.*, *Lopez v. Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003) (unpublished) (noting that a GAF rating of 40 may indicate problems not necessarily related to an individual's ability to hold a job).

Here, the ALJ reasonably gave Plaintiff's low GAF scores "little weight" because they were subjective evaluations at a single point in time, which did not directly correlate with the severity requirements for mental impairments under agency regulations, and which were no longer included in the most recent edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM) (5th ed. 2013) (*see* Tr. 16 n.1). *See Rose v. Colvin*, 634 F. App'x 632, 636 (10th Cir. 2015) (finding no error in an ALJ's failure to even discuss a GAF score of 40, because GAF scores have no direct correlation to disability and the current DSM discontinued the use of the GAF due to its "conceptual lack of clarity"). And, further, Plaintiff has not explained how she was prejudiced by the ALJ's weighing of her GAF scores here, where two State agency psychological consultants considered the treatment notes containing these GAF scores and found that Plaintiff could nonetheless perform simple work with limited public contact (*see* Tr. 79-80, 91-93). The Court finds the ALJ did not err in his evaluation of Plaintiff's GAF scores and articulated valid, sufficient reasons for giving them little weight.

### C. The ALJ reasonably found Plaintiff's medication noncompliance was probative.

The ALJ's finding regarding Plaintiff's medication noncompliance was twofold. First, the ALJ noted, "[Plaintiff] does not take her medications as prescribed" (Tr. 17). Second, the ALJ found that there are "days that are quite productive, even without taking her medication consistently" (Tr. 17, 393). Together, these findings yielded the ALJ's conclusion that

4

Plaintiff's "lack of willingness to follow medical advice suggest that her symptoms are not as limiting as alleged" (Tr. 17). Plaintiff does not dispute that she consistently failed to take her prescription medications.

Instead, Plaintiff cites to Social Security Ruling (SSR) 82-59 and argues that the ALJ was required to determine whether there as a justifiable reason for her not taking her medications as prescribed (Pl. Br. at 17). But SSR 82-59 only requires such analysis when an otherwise-disabled individual is found not to be under a disability by virtue of their failure to follow prescribed treatment. *See* "Policy Statement" preceding SSR 82-59, available online at https://www.ssa.gov/OP_Home/rulings/di/02/SSR82-59-di-02.html. Here, the ALJ did not find Plaintiff not disabled because she was noncompliant with her treatment; rather, her noncompliance was part of assessing the severity of her symptoms. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (distinguishing between an ALJ's consideration—in assessing credibility—of a claimant's attempts to relieve pain and an ALJ's decision to deny an otherwise disabled claimant benefits under 20 C.F.R. § 404.1530); *cf. Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987) (discussing denial of benefits under 20 C.F.R. § 404.1530)). The Court finds that the ALJ permissibly considered Plaintiff's failure to take her medications in this context. *See id.*

Plaintiff further argues that the ALJ failed to consider the ineffectiveness of her medications (Pl. Br. at 18). However, the ALJ found that, together, (1) Plaintiff's decision to not take her medications as prescribed, and (2) her ability to accomplish tasks even without medication, indicated that her symptoms were not as severe as alleged. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (an ALJ considers the effectiveness of medication).

In other words, the ALJ considered Plaintiff's medication use and found that, if her symptoms were more severe, she more likely would have taken her helpful medications and would not have been able to function without such medication.  This was not the case.  Indeed, the Court notes that Plaintiff remained able to care for her daughter, regardless of her medication non-compliance (Tr. 36).

Plaintiff also argues that the ALJ should have considered that "her non-compliance was attributed by both [Plaintiff] and her treating therapists to her [mental] impairments" (*e.g.*, her concerns about her weight) (Pl. Br. at 18-19; *see also* Plaintiff's Reply Brief (Pl. R. Br.) at 9-10).  The Court finds that the evidence does not bear this out as a reason.  First, no mental health provider ever indicated that Plaintiff had any reasonable, medical basis for not taking her medications—while noting that she would likely not be compliant with medications if she believed they would contribute to weight gain, her providers nonetheless characterized her lack of adherence as non-compliance (*see, e.g.*, Tr. 367, 436).  Second, Plaintiff never told providers that she was not taking medications due to weight concerns, instead typically indicating that she got busy or just forgot (*see, e.g.* Tr. 438 (reporting, in the same visit, a recent trip to Las Vegas and forgetting to take her medications), 452 (forgot to take her medications when her schedule got disrupted, with many visitors, during the holiday season)).  Nor did Plaintiff's testify that there was a medical reason for her non-compliance.  In the absence of evidence that Plaintiff's mental impairments were the reason for her medication noncompliance, the Court concludes that the ALJ reasonably found Plaintiff's lack of compliance probative of her claimed disability.  *See Adams v. Colvin*, 553 F. App'x 811, 815-16 (10th Cir. 2014) (unpublished) (rejecting the claimant's argument that the ALJ should not have relied on his "noncompliance with mental

6

medical health treatment and [substance] use . . . as evidence that he was not credible" where he had bipolar disorder and antisocial personality disorder, because "[he] fails to cite any evidence that his use of alcohol and marijuana and his intermittent pursuit of mental-health treatment were the result of his mental illnesses").

## II. The ALJ sufficiently considered the opinions of two non-acceptable medical sources, and provided valid reasons for discounting their opinions.

The ALJ rejected two non-acceptable medical source opinions because one relied on symptoms (dissociation and anger) that were "not discussed extensively in the objective medical evidence in this case" and "not with the frequency or intensity that would prevent work," and the other was inconsistent with evidence showing that Plaintiff cared for a young child, crocheted, and sold items she crocheted for extra income (*see* Tr. 18, 377-78 462-65). Plaintiff essentially claims that the record did not support the ALJ's reasons for discounting these two non-acceptable medical source opinions because (1) it was difficult for her to care for her child; (2) she got paid only for crocheting a few items; and (3) she discussed dissociative symptoms in therapy (*see* Pl. Br. at 8-14).

At the outset, "acceptable medical source" is a term of art. *See* 20 C.F.R. §§ 404.1502, 416.902, 404.1513(a), 416.913(a). Licensed psychologists, like Dr. Raps and Dr. Berkowitz, whose opinions the ALJ gave great weight (as discussed above), are acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Non-physicians and non-psychologists, like Plaintiff's two counselors who also submitted opinions in this case—Shelly Bingham (a clinical mental health counselor) and Heather Jones, Ph.D. (a licensed clinical social worker)—are not acceptable medical sources. *See id.*

As noted in SSR 06-03p: "The fact that a medical opinion is from an acceptable medical source is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an acceptable medical source because . . . acceptable medical sources are the most qualified health care professionals." SSR 06-03p, 2006 WL 2329939, at *5. Similarly, under 20 C.F.R. §§ 404.1527(c)(5) and 416.927(c)(5), greater weight may be given to the opinion of a medical specialist, such as a psychologist, rather than to the opinion of a non-specialist, such as a social worker. In any event, an ALJ may give less weight to any opinion from any source—acceptable or not—if the opinion is not well-supported by objective medical evidence, or if it is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(3), (c)(4), 416.927(c)(3), (c)(4). An ALJ's consideration of statements from non-acceptable or "other" medical sources is sufficient if it permits the Court to "follow the adjudicator's reasoning." *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (quoting SSR 06-03p, 2006 WL 2329939, at *6)).

As explained below, the Court finds that the ALJ gave valid reasons for discounting both of the non-acceptable medical source opinions in this case, and the record supports the ALJ's stated reasons.

### A. The ALJ validly and sufficiently discounted the opinion of Ms. Bingham because it was not supported by the objective medical evidence and it was inconsistent with the record.

Ms. Bingham opined that Plaintiff's level of work-related functioning was "seriously limited" or "unable to meet competitive standards" in many areas due to "anger" triggering "a dissociative state in which she behaves aggressively and claims to be out of control" (*see* Tr. 377-78). The Court finds that the ALJ articulated valid and sufficient reasoning for

discounting Ms. Bingham's opinion—it was not supported by objective medical evidence, which did not discuss dissociation extensively, and it was inconsistent with the record, which did not show angry outbursts of the frequency or intensity that would preclude work (Tr. 18). *See Keyes-Zachary*, 695 F.3d at 1163; *see also* 20 C.F.R. §§ 404.1527(c)(3), (c)(4), 416.927(c)(3), (c)(4). Substantial evidence supports the ALJ's valid reasons.

The record shows that Plaintiff did not mention dissociative-type events until January 2014 (more than a year after her alleged disability onset date), and all but one reference to such happenings stemmed from Plaintiff's own subjective statements (*see, e.g.*, Tr. 360 ("Symptom: Dissociative State"), 367 ("believes she has . . . periods of dissociation") 372 ("SYMPTOMATOLOGY: . . . [s]he cannot always remember what she does when she is the other person.")) (*cf.* Tr. 410 (the single clinical observation of dissociation, lasting only a few moments). However, Plaintiff's subjective statements are considered symptoms, not objective medical signs. *See* 20 C.F.R. §§ 404.1528(b), 416.928(b). Based on the foregoing, the Court finds that the record supported the ALJ's valid reasons decision to discount Ms. Bingham's opinion because the objective medical evidence did not extensively discuss dissociation and the record did not show angry outbursts of the frequency or intensity that would preclude work.

**B.    The ALJ validly and sufficiently discounted the opinion of Ms. Jones as inconsistent with the evidence related to Plaintiff's activities of daily living.**

Heather Jones, Ph.D., a licensed clinical social worker, opined that Plaintiff would be unable to work in a competitive setting for at least six months due to, among other things, an inability to stay on task and maintain consistent attendance (*see* Tr. 462-65). The Court finds that that ALJ articulated valid and sufficient reasoning for discounting Ms. Jones's opinion—it

was inconsistent with evidence showing that Plaintiff's daily activities included caring for her young child, crocheting, and selling the items she crocheted for extra income (Tr. 18).

Again, the ALJ may reasonably discount a medical opinion that is inconsistent with other evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see also Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted even a treating physician opinion that was inconsistent with other evidence). A claimant's daily activities are not excluded from this other evidence. *See Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (affirming the ALJ's decision discounting the treating physician's opinion that the claimant had extreme limitations based on the claimant's daily activities, including that she was able to "car[e] for her own personal needs; do [ ] household chores, i.e., dishes, vacuuming; cooking; texting friends; using a computer; driving; grocery shopping; reading; watching television; visiting with friends; attending church on a weekly basis; and, attending church activities one night a week"). Here, the ALJ reasonably found that Plaintiff's ability to care for her young child and crochet items for sale were inconsistent with Dr. Jones's opinion (Tr. 18). The Court concludes that the ALJ's finding is reasonable and supported by substantial evidence.

First, the record unambiguously supports the ALJ's finding that Plaintiff was the primary caretaker for her infant daughter (Tr. 218-19, 235, 427 ("rarely has time away from mothering"). Although this was not always easy for Plaintiff, she was emphatic that her daughter was always "taken care of" (Tr. 36). Thus, the ALJ reasonably surmised that Plaintiff's ability to care for her daughter conflicted with Dr. Jones's opinion that, for example, Plaintiff could not stay on task, sustain an ordinary routine, or make simple work-related decisions (*see* Tr. 463). Plaintiff

simply presents an alternative interpretation of the record (*see* Pl. Br. at 13), which is not entitled to deference under substantial evidence review.

Second, the record is similarly unambiguous that Plaintiff was able crochet during the relevant period (Tr. 221, 460). Although Plaintiff reported she no longer enjoyed crocheting (Tr. 360, 362), this was only a phase (*see* Tr. 446). Contrary to Plaintiff's contention (Pl. Br. at 13-14), the fact that this was a limited work activity is immaterial. Social Security regulations provide that, "[e]ven if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did." 20 C.F.R. §§ 404.1571, 416.971. Here, contrary to Plaintiff's contention that she did not crochet consistently as a hobby or as a business (Pl. R. Br. at 6), the record includes Plaintiff's statement that, after she crocheted a few items for pay, she took additional orders to make more items and had a plan to sell them at higher prices (Tr. 460). In any event, an ALJ is entitled to draw reasonable inferences from the record. *See* SSR 82-62, 1982 WL 31386, at *4. Here, the Court finds that it was reasonable for the ALJ to conclude that Plaintiff's ability to sell crocheted items was inconsistent with, for example, Dr. Jones's opinion that she could not remember work-like procedures, maintain attention and concentration, or set realistic goals and make plans (*see* Tr. 463-64).

In sum, when viewed in its entirety, the record contains substantial evidence to support the ALJ's finding that Plaintiff was not disabled. By law, this court is not authorized to re-weigh the evidence. Even assuming *arguendo* that the court might have arrived at a different conclusion on the same evidence, this court's function is limited to determining whether the administrative law judge had substantial evidence to support <u>his</u> findings and decision. *Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does

not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted)).

## CONCLUSION

Because the ALJ's decision is supported by substantial evidence and is free of harmful legal error, it is AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993). The Clerk of Court is directed to close the case.

DATED this 15th day of September, 2016.

_____
PAUL M. WARNER
United States Magistrate Judge